UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RAYMOND P. SCOTT and CARLA SCOTT,<br><br>Plaintiffs,<br><br>v.<br><br>BLUEGREEN VACATIONS UNLIMITED, INC; THE CLUB AT BIG BEAR VILLAGE; THE CLUB AT BIG BEAR VILLAGE MASTER ASSOCIATION; THE CLUB AT BIG BEAR VILLAGE FRACTIONAL OWNERS ASSOCIATION; BLUEGREEN RESORTS MANAGEMENT, INC; VACATION TRUST, INC; BLUEGREEN VACATIONS CORPORATION; BLUEGREEN RESORTS; BLUEGREEN VACATION CLUB; BBX CAPITAL CORPORATION; BFC FINANCIAL CORPORATION; and SHAWN B. PEARSON and DOES 1 through 10,<br><br>Defendants. | CASE NO. 19-CV-01807-AWI-JLT<br><br>**ORDER GRANTING DEFENDANTS' MOTION TO DISMISS FIRST AMENDED COMPLAINT AND DENYING AS MOOT MOTION TO DISMISS COMPLAINT**<br><br>(Doc. Nos. 6, 12) |

## I.  **INTRODUCTION**

Plaintiffs Raymond Scott and Carla Scott bring claims against one individual and numerous entities ("Defendants") alleging that transactions through which Plaintiffs acquired timeshare estates and points entitling them to periodic use of certain vacation properties violated state and federal securities law. Certain Defendants brought a motion to dismiss arguing, in the main, that Plaintiffs' claims are time-barred and that the transactions in question did not involve securities. For the reasons set forth below, the Court will grant the motion to dismiss in its entirety

and dismiss all claims as to all Defendants with prejudice.

## II. BACKGROUND

### A. Relevant Facts[1]

On June 5, 2015, Plaintiffs purchased a timeshare estate in a resort called The Club at Big Bear Village from Bluegreen Vacations Unlimited, Inc. ("Bluegreen")[2] pursuant to a contract entitled "Bluegreen Owner Beneficiary Agreement" (the "June 2015 Purchase Contract"). Doc. No. 13, page 5 of 24.

By virtue of that transaction, Plaintiffs became "Owner Beneficiaries" under a trust agreement entitled the "Bluegreen Vacation Club Trust Agreement" ("Trust Agreement"). Doc. No. 13, page 10 of 24. As "Purchaser[s]" under the June 2015 Purchase Contract and as Owner Beneficiaries under the Trust Agreement, Plaintiffs were entitled to "Owner Beneficiary Rights" that included the right to an annual allotment of "Vacation Points." Id.

The 2015 Agreement states that Vacation Points "represent[ed] the opportunity to use and enjoy" The Club at Big Bear Village (and other vacation properties in the Bluegreen portfolio) subject to provisions in the Trust Agreement and related instruments, and that "[t]he number of Vacation Points allocated to a Purchaser w[ould] determine which [a]ccommodations or [f]acilities, and at which times of the year, such may be reserved and occupied by Purchaser or any other Owner Beneficiary." Doc. No. 13, pages 5 and 13 of 24.

Plaintiffs paid $27,850 for their timeshare estate in The Club at Big Bear Village and received an annual allocation of 20,000 Vacation Points under the June 2015 Purchase Contract. Doc. No. 13, page 6 of 24; Doc. No. 11 ¶ 12.

On or about August 22, 2015, Plaintiffs paid an additional $30,850.50 for a second

---

[1] This section synthesizes allegations in the First Amended Complaint ("1AC") and terms in the contracts at issue in this action. The Court takes judicial notice of "existence and legal effect" of the contracts for the reasons set forth in Part III of this Order.

[2] Plaintiffs allege claims under state and federal securities law against Bluegreen Vacations Unlimited, Inc. and several affiliated entities. Parsing out the relationships between and among these entities and identifying the roles that each entity played in the events alleged in the 1AC is not necessary to decide this motion. Unless otherwise indicated, the Court uses "Bluegreen" as a catch-all term herein to capture any Defendant entities that might be relevant in a given context.

timeshare estate in The Club at Big Bear Village and an additional annual allocation of 25,000 Vacation Points, pursuant to an essentially identical contract containing the provisions set forth above (the "August 2015 Purchase Contract," and together with the June 2015 Purchase Contract, the "Purchase Contracts"). Doc. No. 13, Ex. B; Doc. No. 11 ¶ 13.

The 1AC alleges that these transactions took place after a sales pitch in which "Bluegreen salespeople represented to Plaintiffs that their points were tied to real property, that the points would increase in value over time as a result of efforts bestowed by Bluegreen, that the points could be sold for a profit and that the Scotts could bequeath the points to their heirs." Doc. No. 11 ¶ 14.

The 1AC further alleges that: (i) "Bluegreen's points provide nothing more than an opportunity to attempt to reserve rooms at various properties during various times of the year," Doc. No. 11 ¶ 35;  (ii) Vacation Points "do not increase in value," id. ¶ 8; (iii) "there is no viable secondary market for [Vacation Points]," id.; (iv) "[t]here is no way for the Bluegreen members to sell their membership," id.; (v) "Bluegreen memberships are liabilities not assets," id.; and (vi) Vacation Points are "non-transferable" with "no intrinsic value." Doc. No. 11 ¶¶ 63, 67.

At some point after May 2017, Plaintiffs "attempted to reserve a simple four-day cruise to Mexico" and learned that the 45,000 points they acquired under the Purchase Contracts in 2015 could no longer be used. Doc. No. 11 ¶ 86. That appears to be the first time Plaintiffs attempted to make use of Vacation Points. Id. Bluegreen attempted to upsell Plaintiffs to a more expensive program but otherwise took no constructive action to enable Plaintiffs to redeem the Vacation Points acquired under the Purchase Contracts. Id. ¶ 87.

### B. Procedural History

Plaintiffs filed an action based on the Purchase Contracts at issue here in Kern County Superior Court on March 14, 2018, alleging fraud and breach of contract (the "First Action"). Case No. 18-cv-00649-AWI-JLT, Doc. No. 1. That action was removed to this Court on May 9, 2018. Id. The Court granted Defendants' motion to dismiss with leave to amend in 21 days. Case No. 18-cv-00649-AWI-JLT, Doc. No. 11. Plaintiffs elected not to amend the pleadings and voluntarily dismissed the First Action without prejudice on December 11, 2018. Case No. 18-cv-00649-AWI-

3

JLT, Doc. No. 13.

On October 4, 2019, Plaintiffs filed a second complaint in Kern County Superior Court in connection with the Purchase Contracts, alleging claims under the Securities Act of 1933[3] ("Securities Act") and California's Corporate Securities Law of 1968[4] ("California Act"). That action was removed to this Court on December 27, 2019. Doc. No. 1. Moving Defendants[5] brought a motion to dismiss the Complaint on January 3, 2020, Doc. No. 6, and Plaintiffs filed the 1AC on January 24, 2020, before briefing on the motion to dismiss was complete.[6] Doc. No. 11. Moving Defendants brought the instant motion to dismiss the 1AC pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure on February 6, 2020.[7] Doc. No. 12.

## III.   LEGAL FRAMEWORK

Under Rule 12(b)(6), a claim may be dismissed for the plaintiff's "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). A dismissal under Rule 12(b)(6) may be based on the lack of a cognizable legal theory or on the absence of sufficient facts alleged under a cognizable legal theory. See Mollett v. Netflix, Inc., 795 F.3d 1062, 1065 (9th Cir. 2015). In reviewing a complaint under Rule 12(b)(6), all well-pleaded allegations of material fact are taken as true and construed in the light most favorable to the non-moving party. Kwan v. SanMedica, Int'l, 854 F.3d 1088, 1096 (9th Cir. 2017). However, complaints that offer no more than "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do."

---

[3] 15 U.S.C.A. § 77a, et seq.

[4] Cal. Corp. Code §§ 25000, et seq.

[5] The "Moving Defendants" are Bluegreen Vacations Unlimited, Inc., The Club at Big Bear Village, The Club at Big Bear Village Master Association, The Club at Big Bear Village Fractional Owners Association, Bluegreen Resorts Management, Inc., Bluegreen Vacations Corporation, and BFC Financial Corporation. Doc. Nos. 6 & 12. The other named Defendants in this action are Woodbridge Holdings, LLC, BBX Capital Corporation, Vacation Trust, Inc., Resort Title Agency, Inc., Bluegreen Resorts, Bluegreen Vacation Club and an individual by the name of Shawn Pearson. Doc. No. 11 ¶¶ 16-28.

[6] The motion to dismiss the Complaint is hereby DENIED as moot. See Coric v. Mims, 2009 WL 2767748, at *1 (E.D. Cal. Aug. 28, 2009) (motion to dismiss superseded pleading is moot).

[7] Unless otherwise noted, all references herein to "Rule 12(b)(6)" are to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009); Johnson v. Federal Home Loan Mortg. Corp., 793 F.3d 1005, 1008 (9th Cir. 2015). The Court is "not required to accept as true allegations that contradict exhibits attached to the Complaint or matters properly subject to judicial notice, or allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." Seven Arts Filmed Entm't, Ltd. v. Content Media Corp. PLC, 733 F.3d 1251, 1254 (9th Cir. 2013). To avoid a Rule 12(b)(6) dismissal, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Iqbal, 556 U.S. at 678; Mollett, 795 F.3d at 1065.

If a motion to dismiss is granted, courts should generally grant leave to amend, even if no request to amend the pleading was made. Ebner v. Fresh, Inc., 838 F.3d 958, 962 (9th Cir. 2016). Courts may decline to grant leave to amend, however, where amendment would be futile and where "there is strong evidence of 'undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [or] futility of amendment, etc.' " Sonoma County Ass'n of Retired Employees v. Sonoma County, 708 F.3d 1109, 1117 (9th Cir. 2013) (brackets in original) (quoting Foman v. Davis, 371 U.S. 178, 182 (1962)); see also, Garmon v. County of L.A., 828 F.3d 837, 842 (9th Cir. 2016) (leave to amend not required where amendment "would be futile or the plaintiff has failed to cure deficiencies despite repeated opportunities").

## IV. REQUEST FOR JUDICIAL NOTICE

Moving Defendants request that the Court take judicial notice of the Purchase Contracts through which Plaintiffs acquired the Vacation Points at issue in this action, which are referred to in the request for judicial filed in support of the instant motion as "Purchase Contract No. 906775, dated June 5, 2015, signed by [] Raymond Scott and Carla Scott" and "Purchase Contract No. 925678, dated August 22, 2015, signed by [] Raymond Scott and Carla Scott." Doc. No. 13, page 2 of 24. The Purchase Contracts are not attached to the 1AC, but they are attached as exhibits to Moving Defendants' request for judicial notice. Doc. No. 13, Exhs. A & B.

The Ninth Circuit has held that "[a] district court ruling on a motion to dismiss may

5

consider documents whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the [plaintiff's] pleading." Parrino v. FHP, Inc., 146 F.3d 699, 705–06 (9th Cir. 1998), as amended (July 28, 1998) (quoting Branch v. Tunnell, 14 F.3d 449, 454 (9th Cir.1994). Moreover, the Ninth Circuit "ha[s] extended the 'incorporation by reference' doctrine to situations in which the plaintiff's claim depends on the contents of a document, the defendant attaches the document to its motion to dismiss, and the parties do not dispute the authenticity of the document, even though the plaintiff does not explicitly allege the contents of that document in the complaint." Knievel v. ESPN, 393 F.3d 1068, 1076 (9th Cir. 2005) (citing Parrino, 146 F.3d at 706 and Horsley v. Feldt, 304 F.3d 1125, 1135 (11th Cir. 2002)). This rule "is supported by the policy concern" of "[p]reventing plaintiffs from surviving a Rule 12(b)(6) motion by deliberately omitting references to documents upon which their claims are based." Parrino, 146 F.3d at 706 (citing Pension Benefit Guaranty Corp. v. White Consol. Indus., 998 F.2d 1192, 1196 (3d Cir. 1993) and Cortec Indus., Inc. v. Sum Holding L.P., 949 F.2d 42, 47 (2d Cir. 1991) (upholding the district court's consideration of a stock purchase agreement and an offering memorandum attached to the defendant's Rule 12(b)(6) motion where the plaintiff alleged securities fraud)); see also Lee v. City of Los Angeles, 250 F.3d 668, 688 (9th Cir. 2001) ("If the documents are not physically attached to the complaint, they may be considered if the documents' 'authenticity ... is not contested' and 'the plaintiff's complaint necessarily relies' on them." (citations omitted)).

    As set forth below, all three of the counts set forth in the 1AC depend on findings that the Purchase Contracts through which Plaintiffs acquired the Vacation Points are securities for purposes of federal and state securities law. Further, Plaintiffs have not raised objections to Moving Defendants' request for judicial notice or challenged the authenticity of the Purchase Contracts as filed by Moving Defendants in support of their motion to dismiss. Nor, for that matter, did Plaintiffs object to judicial notice of the Purchase Contracts—or question of the authenticity of the Purchase Contracts—in the First Action.

    The Court will therefore take judicial notice of the "existence and legal effect" of the Purchase Contracts in deciding this motion. See Daniels v. United States, 2017 WL 3478765, at

*4 (S.D. Cal. Aug. 11, 2017) ("The Court may take judicial notice of the 'existence and legal effect' of contracts between the parties 'that provide the foundations for [a plaintiff's] claims.' " (quoting Neilson v. Union Bank of California, N.A., 290 F. Supp. 2d 1101, 1114 (C.D. Cal. 2003)).

**V.     ANALYSIS**

There are two counts directly at issue in this motion: Count I and Count III. Count I of the 1AC is for the offering and sale of unregistered securities in violation of the Securities Act and the California Act, Doc. No. 11, ¶¶ 89-101, and Count III is for creating the false and misleading appearance of secondary trading to induce the purchase of securities in violation of the California Act. Id. ¶¶ 109-113.

Moving Defendants argue, in the main, that both counts are time-barred and that securities laws do not apply to Plaintiffs' purchase of Vacation Points. Doc. No. 12-1, Part 5.A. Plaintiffs, for their part, take the position that the Purchase Contracts are "investment contracts, and therefore securities" subject to registration requirements and such under state and federal securities law, id. Doc. No. 11 ¶ 10, and that, even if their claims under the Securities Act are barred by the applicable statute of repose, their claims under the California Act are timely by virtue of California's delayed discovery rule. Doc. No. 16, Part II.A.

**A.     Counts I and II**

In order to make out a claim under securities laws, a plaintiff must as a threshold matter set forth facts making a plausible showing that the transaction or transactions in question involved one or more securities. See Koch v. Hankins, 928 F.2d 1471, 1475 (9th Cir. 1991).

The Securities Act and the California Act contain provisions that define the term "security,"[8] but those definitions are not "dispositive as to whether a particular instrument, agreement or transaction constitutes a security." Deauville Sav. & Loan Ass'n v. Westwood Sav. & Loan Ass'n, 648 F. Supp. 513, 515–17 (C.D. Cal. 1986). "It has been ultimately left up to [] courts to determine what financial transactions actually involve 'securities' …." Amfac Mortg.

---

[8] See 15 U.S.C.A. § 77b(a)(1) and Cal. Corp. Code § 25019, respectively.

Corp. v. Arizona Mall of Tempe, Inc., 583 F.2d 426, 431 (9th Cir. 1978) (citing United Housing Foundation, Inc. v. Forman, 421 U.S. 837, 848 (1975)).

Although this determination can, in some cases, involve factual analysis of the sort reserved for summary judgment, "if the transactions pleaded in plaintiff's complaint do not constitute 'securities,' then dismissal for failure to state a claim upon which relief can be granted is proper." Amfac Mortg. Corp., 583 F.2d at 430–32 (citing Hilgeman v. National Insurance Co. of America, 547 F.2d 298, 300 (5th Cir. 1977)); see also, Salameh v. Tarsadia Hotel, 726 F.3d 1124, 1132 (9th Cir. 2013) (affirming dismissal of claims under state and federal securities laws with prejudice for failure to state a claim under Rule 12(b)(6) on holding that "Plaintiffs ha[d] not alleged the sale of a security and thus ha[d] not stated claims for relief under federal or state securities law"); In re Nat'l Mortg. Equity Corp. Mortg. Pool Certificates Sec. Litig., 636 F. Supp. 1138, 1163–64 (C.D. Cal. 1986) (stating that "dismissal for failure to state a claim upon which relief can be granted is proper" where "the complaint clearly discloses that the transaction pleaded is not a 'security' "); Deauville Sav. & Loan Ass'n, 648 F. Supp. at 515 (granting motion to dismiss under Rule 12(b)(6) on finding that the instrument in question was "not a security"). As with other issues decided on motions to dismiss under Rule 12(b)(6), courts may take facts and records properly subject to judicial notice into consideration in determining whether an agreement is a security. See Deauville Sav. & Loan Ass'n, 648 F. Supp. at 515–17 (concluding that "the loan participation at issue in th[e] case [wa]s not a security within the meaning of the federal securities laws" based on "the facts alleged in plaintiff's complaint and the facts apparent from the exhibits attached thereto and expressly incorporated therein").

As noted above, Plaintiffs contend that each of the Purchase Contracts is an "investment contract" of the sort listed in the statutory definitions of "security" in the Security Act and California Act, while Moving Defendants argue, in essence, that Plaintiffs acquired the Vacation Points at issue in this case through consumer transactions that are not subject to securities law. For the reasons set forth below, the Court agrees with Moving Defendants.

    **1.**    *Howey* **Test**

Courts in the Ninth Circuit apply the test set forth by the United States Supreme Court in

SEC v. W. J. Howey Co., 328 U.S. 293 (1946) to determine whether an agreement constitutes an "investment contract" under securities law. Under *Howey*, an "investment contract" means "a contract, transaction or scheme whereby a person invests his money in a common enterprise and is led to expect profits solely from the efforts of the promoter or a third party."[9] Howey, 328 U.S. at 299. Hewing closely to the language in *Howey*, the Ninth Circuit has distilled this definition into a three-part test requiring "(1) an investment of money (2) in a common enterprise (3) with an expectation of profits produced by the efforts of others." Warfield v. Alaniz, 569 F.3d 1015, 1020 (9th Cir. 2009) (quoting SEC v. Rubera, 350 F.3d 1084, 1090 (9th Cir. 2003) (internal quotation marks omitted). "A common enterprise is one in which the fortunes of the investor are interwoven with and dependent upon the efforts and success of those seeking the investment or of third parties." SEC v. Glenn W. Turner Enterprises, Inc., 474 F.2d 476, 482 n.7 (9th Cir.), cert. denied, 414 U.S. 821 (1973). And "profits" refers to "either capital appreciation resulting from the development of the initial investment" or "a participation in earnings resulting from the use of investors' funds."[10] Forman, 421 U.S. at 852.

In applying the *Howey* test, courts examine "the economic realities of [a] transaction" to distinguish a putative security from "other commercial dealings" that are not subject to securities laws. Forman, 421 U.S. at 851–52. "What distinguishes a security transaction … is an investment where one parts with his money in the hope of receiving profits from the efforts of others, and not where he purchases a commodity for personal consumption …." Id. at 858. In other words, an "investment contract" may exist where "money is invested in a common enterprise with profits

---

[9] The analysis as to the existence of a security is the same under federal securities law and state securities law. Salameh, 726 F.3d at 1130-32 (finding based on the *Howey* test that plaintiffs had "not stated claims for relief under federal or state securities law"); see also, Moreland v. Dep't of Corps., 194 Cal. App. 3d 506, 512 (1987) ("The California Corporate Securities Law was patterned after the federal Securities Act of 1933."); People v. Schock, 152 Cal. App. 3d 379, 387 (1984) (stating that California courts "may usefully consult federal decisions … in defining the term 'security' " under California securities law).

[10] California courts sometimes use a "risk capital" test "to determine whether an investment has been made in return for securities." United States v. Carman, 577 F.2d 556, 563 (9th Cir. 1978). That test, however, is used primarily to distinguish between a "risky loan," which is not subject to securities laws, from "risk capital" that may be subject to securities laws. See Great W. Bank & Tr. v. Kotz, 532 F.2d 1252, 1257 (9th Cir. 1976). There are no allegations or argument that this action involves loans, and thus explicit discussion of the "risk capital" test is not required here. See id.

9

anticipated by virtue of others' work," Salameh, 726 F.3d at 1130, but "when a purchaser is motivated by a desire to use or consume the item purchased—'to occupy the land or to develop it themselves,' as the *Howey* Court put it[]—the securities laws do not apply." Forman, 421 U.S. at 853 (citation omitted).

The Purchase Contracts at issue here state that Vacation Points "represent[ed] the opportunity to use and enjoy" The Club at Big Bear Village (and other vacation properties in the Bluegreen portfolio) and that "[t]he number of Vacation Points allocated to a Purchaser w[ould] determine which [a]ccommodations or [f]acilities, and at which times of the year, such may be reserved and occupied by Purchaser or any other Owner Beneficiary." Doc. No. 13, page 5 and 13 of 24.

Each Purchase Contract also contains a provision entitled "Purchaser's Acknowledgments" expressly stating that each of the transactions in question was "only for [Plaintiffs'] personal use and not for any investment potential":

> PURCHASER'S ACKNOWLEDGMENTS. Purchaser further acknowledges, agrees and represents that the Property and the rights and appurtenances described herein (in particular the allocated appurtenant Vacation Points) and membership in the Bluegreen Vacation Club are being purchased only for Purchaser's personal use and not for any investment potential or any possible rent returns, tax advantages, depreciation, guaranteed buy-back, as Purchaser's principal residence, or for any commercial purpose whatsoever ("commercial purpose" includes, but is not limited to, a use or purpose that the Developer or the Board of the Association, in its discretion, could reasonably conclude constitutes a commercial enterprise or which otherwise suggests an intent or expectation to derive profit), all of which Purchaser acknowledges and agrees are prohibited and not part of the subject transaction.

Doc. No. 13, pages 11 and 20 of 24.

In addition, each Purchase Contract contains a "Non-Transferability of Vacation Points" provision stating that Vacation Points are not "separable from Owner Beneficiary Rights" and not "transferable from one Owner Beneficiary to another." Doc. No. 13, pages 13 and 22 of 24 ("19. Non-Transferability of Vacation Points.").

Further, Plaintiffs themselves expressly allege that: (i) "Bluegreen's points provide nothing more than an opportunity to attempt to reserve rooms at various properties during various times of the year," Doc. No. 11 ¶ 35; (ii) Vacation Points "do not increase in value," id. ¶ 8; (iii) "there is no viable secondary market for [Vacation Points]," id.; (iv) "[t]here is no way for the Bluegreen

10

members to sell their membership," id.; (v) "Bluegreen memberships are liabilities not assets," id.; and (vi) Vacation Points are "non-transferable" with "no intrinsic value." Doc. No. 11 ¶¶ 63, 67. Plaintiffs similarly allege that it was in attempting to consume the Vacation Points by redeeming them for a cruise that they discovered the Vacation Points had no value. Doc. No. 11 ¶¶ 86-87.

Plaintiffs also allege, on the other hand, that "Bluegreen salespeople" represented that the Vacation Points "would increase in value over time as a result of efforts bestowed by Bluegreen, that the points could be sold for a profit and that the Scotts could bequeath the points to their heirs." Doc. No. 11 ¶¶ 5, 14. Plaintiffs themselves, however, allege that these statements were false and inconsistent with the terms in the Purchase Contracts, Doc. No. 11 ¶ 6 (stating that "closing documents actually contradict parts of what the prospective purchasers are told and shown during the sales presentations"), ¶ 7 ("the Bluegreen salesperson's representation that they will help an investor/member sell their points directly contradicts the contract"), and the Court sees nothing in the 1AC, the briefing for this motion or the Purchase Contracts themselves indicating that the terms of the Purchase Contracts should not apply as written.[11] See Wolf v. Walt Disney Pictures & Television, 162 Cal. App. 4th 1107, 1126 (2008) (under California law, extrinsic evidence may not be considered "to vary or contradict the clear and unambiguous terms of a written, integrated contract").

Plaintiffs brought a common law fraud claim in the First Action based on alleged omissions and misrepresentations by Bluegreen salespeople prior to execution of the Purchase Contracts. This case, by contrast, involves a species of law specific to transactions in which capital is put at risk primarily for the purpose of generating a financial return through earnings or asset appreciation. See Forman, 421 U.S. at 858. Even in the light most favorable to Plaintiffs, the contents of the Purchase Contracts, combined with facts alleged in the 1AC, show clearly that Plaintiffs purchased the Vacation Points to use vacation accommodations furnished by Bluegreen, not to sell the Vacation Points at a profit or get earnings from Bluegreen. Thus, the Purchase

---

[11] Each of the Purchase Contracts contains a provision providing that it is a fully integrated agreement, stating, for example: "NO PURCHASER SHOULD RELY UPON REPRESENTATIONS OTHER THAN THOSE INCLUDED IN THIS AGREEMENT AND IN THE DOCUMENTS REFERRED TO HEREIN." Doc. No. 13, Exhs. A & B, at pages 7 and 18 of 24.

Contracts are not securities and securities law does not apply to Plaintiffs' acquisition of Vacation Points. See id.

### 2. Conclusion Regarding Counts I and III

Since the Purchase Contracts are not securities, Plaintiffs cannot make out a claim for violation of state or federal securities laws based on them. See Bailey v. Wyndham Vacation Ownership, Inc., 2019 WL 6836772, at *2 (N.D. Cal. Dec. 16, 2019) (stating that a "timeshare [wa]s not a security" where plaintiffs were "motivated by a desire to use or consume the item purchased"). The Court will therefore grant Moving Defendants' motion and dismiss Count I and Count III of the 1AC.[12] Further, since securities law is inapplicable to the Purchaser Contracts, the Court will extend dismissal of Count I and Count III to all Defendants on its own motion. See Sparling v. Hoffman Constr. Co., 864 F.2d 635, 638 (9th Cir. 1988) (trial court may *sua sponte* dismiss for failure to state a claim without notice or an opportunity to respond where "the plaintiffs cannot possibly win relief").

### B. Count II: Control Person Claims

Count II of the 1AC purports to allege claims for "control person liability" under the Securities Act and the California Act against some—or all—of the Defendants. Doc. No. 11 ¶¶ 102-108. The motion to dismiss does not address Count II (perhaps due to confusion as to which Defendants are implicated), but in any event, Count II fails because, as set forth above, Plaintiffs have not alleged a primary violation of a securities law. See The Hemmer Grp. v. Sw. Water Co., 663 F. App'x 496, 498 (9th Cir. 2016) (stating that derivative claims "require an underlying primary violation of the securities laws"). The Court will therefore dismiss Count II—including all claims under both state and federal law—on its own motion as to all Defendants. See Sparling, 864 F.2d at 638; see also, Shoop v. Deutsche Bank Nat. Tr. Co., 465 F. App'x 646, 647 (9th Cir. 2012) (finding that district court did not err by dismissing action *sua sponte* for failure to state a claim despite not providing the plaintiffs notice and an opportunity to oppose dismissal).

---

[12] In light of the Court's finding that the Plaintiffs have failed to allege that the Purchase Contracts were securities, it is unnecessary for the Court to address the parties' arguments with respect to statutes of limitations.

## VI. CONCLUSION

For the foregoing reasons, the motion to dismiss the Complaint (Doc. No. 6) is DENIED as moot and the motion to dismiss Count I and Count III of the 1AC (Doc. No. 12) is GRANTED in its entirety. Further, the Court finds that Plaintiffs have failed to state a claim in Count II of the 1AC because they have not alleged an underlying violation of securities law and that dismissal of Counts I, II and III is warranted as to all Defendants. Finally, the Court finds that amendment would be futile because this action is predicated entirely on securities laws and Plaintiffs cannot allege that the Purchase Contracts—which primarily concern the use of vacation accommodations—were securities. Thus, all three counts—Count I, Count II and Count III—will be dismissed WITH PREJUDICE as to all Defendants. See Garmon, 828 F.3d at 842.

**ORDER**

Accordingly, IT IS HEREBY ORDERED that:

1. The motion to dismiss the Complaint (Doc. No. 6) is DENIED as moot;
2. The motion to dismiss the First Amended Complaint (Doc. No. 12) is GRANTED in its entirety;
3. Counts I, II and III of the First Amended Complaint are DISMISSED WITH PREJUDICE as to all Defendants; and
4. The Clerk of the Court is respectfully directed to CLOSE this case.

IT IS SO ORDERED.

Dated: __June 17, 2020__          _____
                                   SENIOR DISTRICT JUDGE